## Saylor v. Commonwealth.

(Decided June 20, 1912.)

### Appeal from Bell Circuit Court.

1. Criminal Law—False Pretenses.—A local insurance agent can be convicted of obtaining money under false pretenses by falsely

representing to his company that the policy it had issued was the only insurance on the property destroyed, when he knew there, was other insurance on the property that had been collected, and the company did not know this fact, and, induced by the false statements of the agent the company was influenced to settle the loss.

2 Criminal Law—Insurance Agent Obtaining Money by False Pretenses—Double Insurance.—Where a policy provided that if there was other insurance on the property, it should be void, the knowledge of the agent that there was other insurance will not bar the company from the right to rely on the clause in its policy to defeat the recovery of the insurance when the agent in pursuance of a conspiracy and to practice a fraud represented to the company that there was no other insurance on the property.' The fraud of the agent and the property owner will take the case out of the rule charging the company with notice of the knowledge of its agent.

3. Criminal Law—Indictment—False Pretenses—Counts in Indictment.—An indictment for obtaining money under false pretenses that charged in one count that its agent entered into a conspiracy with a property owner to defraud the company, and in pursuance of this conspiracy falsely represented after the property was destroyed by fire that there was no other insurance on it, and in another that he presented to the company a false estimate of the cost of replacing the loss purporting to have been signed by a carpenter, and yet in another assisted the property owner in procuring an affidavit that there was no other insurance, was not objectionable on the ground that it charged three distinct offenses.

4. Criminal Law—Indictment—Separate Counts.—An indictment may set out in separate counts the different modes and manners in which the offense charged was committed.

5. Criminal Law—False Pretenses—Instructions.—Under an indictment charging that the accused committed in three different ways and by three different methods the offense charged, it was proper to instruct the jury that if they believed he was guilty of the offense charged in either of the counts that they might find him guilty.

B. B. GOLDEN, FRANK BAKER, JAMES D. BLACK, H. H. OWENS and PITZER D. BLACK for appellant.

JAMES GARNETT, Attorney General and M. M. LOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

At the time the transactions hereinafter mentioned occurred, the appellant Saylor was the local agent at Pineville, Kentucky, for the Henry Clay Fire Insurance

Company, and on the 17th day of December, 1910, this company through the agency of appellant issued to Mrs. L. A. Williams a policy of insurance upon her house for $600.00 for one year. On December 21, 1910, she obtained through another agent a policy of insurance from the National Union Fire Insurance Company for $400.00 on the same property. On October 8, 1911, the house burned, and on October 26, the loss in the National Union Fire Insurance Company was settled. After the settlement by the delivery of a draft for the amount agreed on, payable to Saylor and Williams, and which draft was collected by Saylor, he wrote to the Henry Clay Fire Insurance Company advising it of the loss, and made out and forwarded a report in the form required by the company. In this report Saylor stated that there was no other insurance on the property. Accompanying this report Saylor sent a letter to the company, in which he advised a speedy settlement of the loss. On receipt of this letter, the company sent its adjuster to Pineville, where he saw Saylor and Mrs. Williams, and had several conversations with each of them in reference to the loss, and in these conversations Saylor told the adjuster that there was no other insurance on the property. The adjuster required an estimate to be made of the cost of replacing the building, and in compliance with this request Saylor produced an estimate of the character required, purporting to have been made and signed by J. M. Davis, a carpenter at Pineville. The adjuster also required an affidavit from Mrs. Williams, setting out among other things that there was no other insurance on the house, and she furnished the affidavit. Upon the receipt of the information required, the adjuster settled the loss by a draft payable to Mrs. Williams, the proceeds of which was also turned over to Saylor by her. At the time of the settlement of the loss, neither the adjuster of the Henry Clay Fire Insurance Company nor any of its officers or agents, except Saylor, knew of the insurance in the National Union Fire Insurance Company; nor had any of them been advised that this company had previously settled its liability under its policy. The policy issued by the Henry Clay Fire Insurance Company provided that "it shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on the property covered in whole or in part by this policy," and it is shown by the uncontra-

dicted evidence of the officers of the company that if they had known of this other insurance they would not have paid anything on account of the loss. Sometime after the settlement, the appellant Saylor and Mrs. Williams were indicted by the Grand Jury of Bell County for obtaining by false pretense the money paid on account of the loss by the Henry Clay Fire Insurance Company.

The indictment was in three counts, and charged a conspiracy and confederation between Saylor and Mrs. Williams for the purpose of practicing a fraud upon the Henry Clay Fire Insurance Company by which they obtained from it $450.00 in settlement of the loss under its policy, no part of which sum would have been paid had it known that there was other insurance on the property. In one count the indictment charged that in pursuance of this agreement and arrangement to defraud, the report by Saylor that there was no other insurance on the property, and the statement to this effect made by him to the adjuster, were made, and it was averred that by reason of the false statements in this report and in the conversation between Saylor and the adjuster the company was induced to settle the loss. In another count it was charged that in pursuance of the conspiracy and agreement to defraud, Saylor produced an estimate of the amount that it would cost to replace the building, purporting to have been made and signed by Davis, when in fact it was not made or signed by him; and, that induced by the statements contained in this estimate the company was influenced to and did settle the loss when otherwise it would not have done so. In another count it was charged that the affidavit made by Mrs. Williams, setting out that there was no other insurance on the property, was made in pursuance of the conspiracy and agreement to defraud, and that misled and deceived by the statements in this affidavit, the company was induced to settle the loss when it would not have done so if it had known the true facts.

When the case came on for trial, the prosecution as to Mrs. Williams was continued, and the trial proceeded as to Saylor with the result that he was found guilty by the jury and his punishment fixed by the court at confinement in the penitentiary from one to five years. He asks a reversal of the judgment for reasons that we will notice in the course of the opinion.

It may be said at the outset that the evidence es-

tablishes beyond a reasonable doubt that Saylor and Mrs. Williams did enter into a conspiracy to defraud the Henry Clay Fire Insurance Company, and that in pursuance of this conspiracy to defraud, the report of the loss, the fraudulent estimate of the cost of rebuilding, and the affidavit of Mrs. Williams that there was no other insurance of the property, were made.

It is first insisted that the demurrer to the indictment should have been sustained, but in our opinion the indictment in each count charged in apt terms the commission of the crime of obtaining the draft by false pretenses, and, that except for these false pretenses, and each of them, the draft would not have been issued or the loss settled.

It is further said that the indictment charged three separate and distinct offenses, and that the Commonwealth should have been required to elect which one of these offenses it would prosecute the appellant for. The indictment did not charge three offenses. It only charged one offense, but the manner in which the one offense was committed was set out in three different counts. The offense was committed by obtaining from the Henry Clay Fire Insurance Company the draft for $450.00 which was collected and appropriated by Saylor, and the indictment charged that the parties to the conspiracy and fraud were enabled to obtain this draft by reason of the false report made by Saylor, the estimate purporting to have been made by Davis, and the false affidavit made by Mrs. Williams. It was proper for the Commonwealth to set out in separate counts in the indictment the different modes and manners by which the offense for which Saylor and Mrs. Williams were being prosecuted was committed, and each count in the indictment was in itself sufficient. If the Henry Clay Fire Insurance Company was induced to pay the money by reason of the false report, or if it was induced to pay the money by reason of the false estimate, or if it was induced to pay the money by reason of the false affidavit, in either of these events the offense was committed, and, upon sufficient proof of either of them, the Commonwealth was entitled to a verdict of conviction.

It is strongly insisted that as Saylor knew of the existence of insurance in the other company, his knowledge was the knowledge of the company, and, therefore, the company could not have relied on the provision in its

policy forbidding other insurance to defeat the payment of the policy. Or, to state it differently, the contention is that the whole case for the Commonwealth was rested upon the ground that under the policy no part of the insurance money was collectible, and that the company only paid it because it did not know of the other insurance; when the fact that there was other insurance did not relieve the company from liability because its agent, Salyor, knew of the other insurance, and, this being so, the company only paid what it could legally have been required to pay, and so was not defrauded at all. This . position of counsel would be well taken except for the fact that the indictment charges, and the evidence shows, a conspiracy between Saylor and Mrs. Williams to defraud this insurance company, and this charge and sustaining evidence takes the case out of the rule that would hold the company liable for other insurance if its agent had knowledge of it. If the agent and the insured, as the indictment charged and the evidence showed, entered into a conspiracy for the purpose of practicing a fraud upon the company, neither · the insured nor the agent should be allowed to excuse their fraud by invoking a rule of law that is only applicable in cases where the insured and the agent act in good faith. If the argument of counsel was sound, there would be little or no limitation on the fraud that dishonest agents and unscrupulous property owners by acting in concert might not practice.

It is also argued that the motion for a peremptory instruction should have been sustained, as there was no competent evidence that the Henry Clay Fire Insurance Company was authorized to do business in this State. Section 683 of the Kentucky Statutes provides in substance that when a fire insurance company is authorized to do business in this State, the Insurance Commissioner shall issue his certificate authorizing the corporation to commence business; and, it was shown by the certificate of the Insurance Commissioner of the State that the Henry Clay Fire Insurance · Company was authorized in May, 1910, to do business in this State, and had been so authorized since that date. This evidence was sufficient to show the authority of the company.

It is further insisted that the instructions did not present the defendant's theory of the case, and, besides, did not properly give the law for the Commonwealth. The

jury were told in substance that if they believed that the report of the loss stating that there was no other insurance on the building, or the false estimate purporting to have been made and signed by Davis, or the false affidavit, or either of them, was made pursuant to and in execution of a conspiracy entered into between Saylor and Mrs. Williams for the purpose of defrauding the Henry Clay Fire Insurance Company, and that the company would not have paid the loss had it known that either the report or the estimate or the affidavit was false, they should find the accused guilty. These instructions presented the whole law of the case, as Saylor had no defense except to contradict the facts proven by the Commonwealth.

Upon the whole case, this may be said: The indictment in language that could not be misunderstood advised the accused of the nature of the accusation against him—the evidence in behalf of the Commonwealth established beyond question his guilt—the instructions fairly submitted to the jury the law of the case; and, the judgment of the lower court is affirmed.